UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RICHARD ALBERT LOGSDON,

        Plaintiff,

v.                                                                          CASE NO.:   5:24-cv-470-JLB-PRL

BILLY WOODS, FNU SMITH, FNU
ROBERTS, FNU BRITT, FNU
HAMMOND, and FNU BARNES,

        Defendants.

_____/

**<u>ORDER</u>**

In this civil rights action, Plaintiff Richard Albert Logsdon, formerly a pretrial detainee at the Marion County Jail (MCJ),[1] raises claims under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act, and the Florida Constitution and Statutes.   (Doc. 16).   He sues Sheriff Billy Woods and other staff at the MCJ.   At the center of Plaintiff's claims is a policy of the MCJ that limits pretrial detainees to possessing three books.   Plaintiff contends that this policy has resulted in his books being confiscated and thereby limits his ability to practice his religion.   Defendants have moved to dismiss this action for Plaintiff's failure to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA) and because they contend Plaintiff's amended complaint is a shotgun pleading.   Plaintiff has responded in opposition, arguing that the administrative

---

[1] Plaintiff is now a prisoner of the Florida Department of Corrections at Santa Rosa Correctional Institution.   (Doc. 44).

remedy process was unavailable to him and that his amended complaint comports with the applicable pleading standards.   After careful review, the Court denies Defendants' motion to dismiss.

## I.    Pleadings

The relevant facts alleged in Plaintiff's amended complaint are taken as true and are as follows:   Plaintiff was a pretrial inmate at the MCJ.   (Doc. 16 at 4). Defendant Woods is the Sheriff of Marion County, Florida.   (Id. at 13). Defendants Hammond, Smith, Britt, Roberts, and Barnes were employees of the Marion County Sheriff's Office and detention officers at the MCJ.   (Id. at 2–3, 14–15).

Sheriff Woods enacted a policy that limits a pretrial detainee to possessing three books.   (Id. at 15).   That policy provides that detainees can receive only one book a month, that the books must be paperback or softcover, and that magazines and newspapers are considered books.   (Id.).   Additionally, he alleges Sheriff Woods failed to train his employees on these matters.   Specifically, Plaintiff alleges Sheriff Woods failed to train his employees how to handle situations in a non-threatening manner, to be professionals, to refrain from using verbal and mental abuse towards inmates, and from abusing their positions of authority.   (Id.).

On May 5, 2024, Defendant Britt removed certain books from Plaintiff's possession, including religious books.   (Id. at 16).   When Plaintiff asked Defendant Britt why his dorm was subject to frequent searches, Defendant Roberts became angry and began cursing at Plaintiff.   (Id.).

On August 21, 2024, Defendant Smith entered Plaintiff's dorm to conduct a search.   (Id. at 16–17).   After the search, Plaintiff noticed that his religious books were missing, except for an English translation of the Bible.   (Id. at 16). Defendant Hammond entered Plaintiff's dorm and was cursing and yelling at Plaintiff.   (Id. at 17).   Additionally, Defendant Hammond made certain threats to Plaintiff.   (Id.).   After the officers left the dorm, the inmates residing in that dorm became aggressive and wanted to fight Plaintiff.   (Id.).

On December 3, 2024, Defendant Hammond searched Plaintiff's room and removed all books except an English translation of the Bible.   (Id. at 18).   In addition, Defendant Hammond removed a letter sent to Plaintiff by his attorney from its folder and read it.   (Id.).

On December 5, 2024, Defendant Roberts threatened Plaintiff with physical violence and retaliation if Plaintiff filed a grievance or lawsuit against him.   (Id. at 18–19).   That same day, Defendant Barnes threatened Plaintiff with physical violence and retaliation if Plaintiff filed grievances or a lawsuit against him.   (Id. at 18).   Defendants Roberts and Barnes turned off the telephones during feeding times, thereby preventing Plaintiff from calling his attorney.   (Id. at 18–19).

On December 10, 2024, Defendants Roberts and Barnes told the inmates that "the phones were a privilege, and if anyone wrote it up[,] there would be problems." (Id. at 19).   On December 13, Defendant Roberts conducted a shakedown of Plaintiff's dorm and confiscated Plaintiff's personal effects, including a Bible and a magazine.   (Id.).

For relief, Plaintiff requests injunctive relief, a mental health evaluation of certain defendants, punitive and nominal damages, and a jury trial.   (Id. at 19).

## II.    Standard of Review

### a.  Exhaustion

Under section 1997e(a) of the Prison Litigation Reform Act (PLRA): "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).   The PLRA's exhaustion requirement is designed to "afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."   Porter v. Nussle, 534 U.S. 516, 524–25 (2002).

The United States Supreme Court has explained that exhaustion must be "proper."   Woodford v. Ngo, 548 U.S. 81, 90–91 (2006).   "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."   Id. at 90–91.   In other words, an institution's requirements define proper exhaustion.   Jones v. Bock, 549 U.S. 199, 218 (2007).   Thus, inmates must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process.   Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008).   Furthermore, an inmate who files an untimely grievance or simply spurns

the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA.   Johnson v. Meadows, 418 F.3d 1152, 1157–59 (11th Cir. 2005).

In Ross v. Blake, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.   The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'"   578 U.S. 632, 648 (2016).   For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'"   Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cty., 510 F.3d 1312, 1322–23 (11th Cir. 2007)).   The Ross Court identified three circumstances in which an administrative remedy would be considered "not available."   578 U.S. at 643–44.   First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."   Id. at 643.   Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."   Id.   Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."   Id. at 644.

The Eleventh Circuit directs district courts to consider an inmate's failure to exhaust in a motion to dismiss.   Bryant, 530 F.3d at 1374–75 ("[A]n exhaustion

defense []is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.") (internal quotation omitted).   In cases like this, in which the defendants allege that a prisoner has not exhausted his administrative remedies, courts may consider evidence outside the four corners of the complaint. Id. at 1377 n.16.   Accordingly, the parties may submit documentary evidence concerning the exhaustion issue, and doing so will not require the conversion of the motion to dismiss into one for summary judgment.   Id.   In addition, the district court may resolve factual questions concerning a plaintiff's alleged failure to exhaust as long as the factual disputes do not decide the merits and the parties had sufficient opportunity to develop a record.   Id. at 1376.

To determine whether a complaint should be dismissed for failure to exhaust administrative remedies, the reviewing court first considers the factual allegations in a defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court must accept as true—for purposes of adjudicating this motion— the plaintiff's version of the facts.   See Turner, 541 F.3d at 1082.   "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."   Id.   If the court determines that the complaint is not subject to dismissal at step one, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."   Id.   "Once the court makes findings on the disputed issues of fact, it

then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083.

### i. Marion County Jail Grievance Procedure

Although Defendants reference the MCJ's Inmate Rules and Regulations Handbook in their motion and state that it is attached as an exhibit, Defendants failed to attach the exhibit. (Doc. 26 at 7). However, in another action involving Plaintiff and the MCJ, see Logsdon v. Woods, et al., No. 5-23-cv-215, Doc. 82-1 at 19–21 (M.D. Fla. July 2, 2025), the same counsel has submitted the handbook as an exhibit to their motion to dismiss, and the Court will take judicial notice of the handbook for these purposes. See Fed. R. Evid. 201(c).

Under the MCJ's policy, a grievance generally must be filed within 30 days of the date of the incident. See Logsdon, No. 5-23-cv-215, Doc. 82-1 at 20. The MCJ encourages inmates to attempt to resolve their grievances informally:

> Whenever possible, you should attempt to resolve any complaint informally, by discussing it with either the staff member(s) involved or other appropriate facility staff. This is referred to as an informal resolution and may be accomplished by personal contact, general conversation, letter, or the submission of an Inmate Request form. All inmates are required to address any problems in an informal manner by submitting an Inmate Request Form before resorting to a formal grievance.

See id.

If an inmate's grievance cannot be resolved informally, the inmate must file a formal grievance. Id. To do so, an inmate must first obtain an Inmate Request Form from the on-duty detention deputy. The inmate must then, "Fill out the form in its entirety requesting to speak to the Sector Sergeant briefly describing the

problem." Id. The Sector Sergeant, upon receipt of the form, "will make personal contact with [the inmate] and attempt to rectify the situation." Id. If the Sector Sergeant can resolve the situation, the "process ends here." Id. "If the complaint is beyond the realm of responsibility for the Sector Sergeant, he/she will direct the inmate to the electronic grievance computer located in each pod." Id. "If the Sector Sergeant/appropriate supervisor is unable to rectify the situation, he/she will provide [the inmate] with access to the grievance computer." Id. "The supervisor may not give [the inmate] access to the grievance computer if [they] have not attempted to handle the complaint formally or if the complaint is beyond the authority of the jail." Id.

Once provided access to the grievance computer, an inmate must "[f]ill out the form in its entirety stating the problem and remedy wanted." Id. A grievance may be returned if it does not meet certain criteria. Id. "Upon notification from the Sector Sergeant/appropriate supervisor that a grievance form has been issued, the Administrative Watch Commander will check the grievance computer and retrieve the grievance." Id. at 21.

"If [inmates] are dissatisfied with the response given to [their] complaint, [they] may file an appeal to the response. [They] must file the appeal within three (3) business days of receipt of the response." Id. "The appeal is then forwarded back to the Administrative Watch Commander[,]" who will "date stamp it and will ensure it is sent to the appropriate supervisor of the staff member who originally responded to [the] grievance." Id. "If [inmates] are dissatisfied with the second

response received, the same process will apply, and the appeal will be forwarded to the next level of supervision." Id.

### b. Shotgun Pleadings

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the claim is and the grounds upon which it rests." See also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Shotgun" pleadings include complaints that: (1) contain multiple counts where each count adopts the allegations of all preceding counts; (2) are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) do not separate each cause of action or claim for relief into separate counts; or (4) assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions. See Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321–23 (11th Cir. 2015).

While all litigants are required to comply with these procedural rules, pleadings from pro se litigants are held to less stringent standards and are to be liberally construed. McNeil v. United States, 508 U.S. 106, 113 (1993). "Pro se prisoner complaints must be read in a liberal fashion and should not be dismissed unless it appears beyond all doubt that the prisoner could prove no set of facts under which he would be entitled to relief." Taylor v. Gibson, 529 F.2d 709, 714 (5th Cir. 1976). Both matters of fact and law are to be read within this more permissive framework. Id. In fact, even where the pro se prisoner's complaint is

deficient in some way, the district court has "a duty to ascertain whether there is any factual basis for the asserted claim."   <u>Watson v. Ault</u>, 525 F.2d 886, 892 (5th Cir. 1976).

### III.   Discussion

#### a.  Exhaustion

Defendants maintain that dismissal for failure to exhaust administrative remedies is warranted because Plaintiff knew of the grievance process but did not file the required formal grievance.   (Doc. 26 at 8).   They further contend that "Plaintiff has presented no facts to support his allegation that he was not 'allowed' to file a grievance."   (<u>Id.</u> at 9).   "Missing are the names of the Jail personnel to whom he made a request to file a formal Grievance, why that request was disallowed by Jail personnel, how many times he made the request, or why he did not file an appeal from the disallowance to file a formal Grievance."   (<u>Id.</u>).

In response, Plaintiff maintains that the formal grievance process was unavailable to him.[2]   (Doc. 41 at 1–2).   He "tried to file formal grievances [but was] not allowed to do so."   (<u>Id.</u> at 2).   He adds that he has requests showing he asked to file formal grievances, but "staff refused [him] the ability to file formal grievances on the electronic grievance computer, or provide any possible solution."   (<u>Id.</u>).   He

---

[2] The Court notes that Plaintiff does not have to plead exhaustion in his complaint as it is an affirmative defense.   Accordingly, his arguments and contentions are properly raised in response to the motion to dismiss.   <u>Turner</u>, 541 F.3d at 1082.

states that he did not receive the determination from the sector sergeant required to complete an electronic grievance.   (Id.).

The Court finds the Defendants have not met their burden in showing that Plaintiff failed to exhaust his administrative remedies.   Plaintiff's allegations regarding his attempts to exhaust his available administrative remedies, accepted as true, preclude dismissal of the claims against Defendants at the first step of the Turner analysis.   541 F.3d at 1082.

Proceeding to the second step, the Court considers Defendants' arguments regarding exhaustion and makes specific findings to resolve the disputed factual issues related to exhaustion.   See Jackson v. Griffin, 762 F. App'x 744, 746 (11th Cir. 2019) (holding disputes about availability of administrative remedies are questions of fact that can bar dismissal at Turner's first step).   In considering the availability of administrative remedies for exhaustion of Plaintiff's claims, the Court finds that Plaintiff was not able to access the electronic grievance system to file formal grievances on his own.

In his initial complaint, Plaintiff included copies of informal inmate requests forms he submitted between May 8, 2024, and August 21, 2024.   (Doc. 1 at 26–29). The forms indicate that Plaintiff would like to file formal grievances.   (Id.). Additionally, Plaintiff's amended complaint raises claims that he requested to speak with a sergeant in order to file formal grievances, but was never afforded the opportunity.   (Doc. 16 at 16–19).   As Plaintiff contends in his response, a sergeant

did not make the grievance computer available to him, and he was therefore unable to file formal grievances as required by MCJ policy.   (Doc. 41 at 2).

Another judge of this Court addressed the prior grievance process[3] at the MCJ and found that, although the policy provided that jail staff should not hamper an inmate's access to the process, "it appears that there is a potential for such when an inmate cannot access the electronic system to file a formal grievance on his own." Cometa v. Woods, No. 5:18-cv-233-OC-34PRL, 2020 WL 674022, at *7 (M.D. Fla. Feb. 11, 2020).   The Cometa court denied the defendant's motion to dismiss for failure to exhaust, finding that the plaintiff had "presented evidence that he expressed his desire [to file formal grievances] in his informal grievances, but apparently was not permitted to complete the process."   Id.   As in Cometa, Plaintiff has alleged and presented informal grievance forms stating that he wanted to file formal grievances but was unable to do so on his own and was apparently not permitted to complete the process.   The Court therefore finds that the grievance process was unavailable to Plaintiff because it required a sergeant to provide him access to the grievance computer and, accepting the allegations in the complaint as true, Plaintiff was not provided that access.   Given this circuit's "strong preference that cases be heard on the merits," Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985), the motion to dismiss is denied with respect to the exhaustion issue as Defendants have not met their burden.

---

[3] The Inmate Rules and Regulations Handbook was revised in June 2022. See Logsdon, No. 5:23-cv-215-TPB-PRL, Doc. 82-1 at 1.

### b. Shotgun Pleading

Defendants argue that Plaintiff's amended complaint is a shotgun pleading because it "asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." (Doc. 26 at 12). Reading the amended complaint "in a liberal fashion," as the caselaw instructs, Plaintiff's pleading is satisfactory. Plaintiff used the Court's standard form for his civil rights complaint, as he was required to do. See M.D. Fla. R. 6.04(a). He explains the grounds for the court's jurisdiction, states a short and plain statement of his claims, provides an account of the injuries that resulted from Defendants' conduct, and finally, makes a demand for relief. (See Doc. 16 at 3–5, 13–20). Specifically, Plaintiff breaks down his claims against each defendant, noting that he asserts multiple claims against Sheriff Woods and that the other defendants violated several of his First Amendment rights. (Id. at 13–15). Because Plaintiff's amended complaint, submitted on this Court's standard prisoner complaint form, conforms to the Federal Rules of Civil Procedure, it is not due to be dismissed for a violation of the pleading standards.

Accordingly, it is

**ORDERED:**

1. The motion to dismiss (Doc. 26) is **DENIED**. Defendants have not met their burden in establishing that Plaintiff failed to exhaust his

- 13 -

administrative remedies, and Plaintiff's amended complaint conforms with the applicable pleading standards.

2. Within 21 days, Defendants must file an answer or otherwise respond to Plaintiff's amended complaint.

**DONE AND ORDERED** in Tampa, Florida this 4th day of February 2026.

**JOHN L. BADALAMENTI**
**UNITED STATES DISTRICT JUDGE**

SA:   OCAP-2
Copies: All Parties of Record

- 14 -